UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SEDAET NAZIFI,

          Plaintiff,

       v.                                                 Case No. 15-cv-1464-bhl

AURORA HEALTH CARE LONG TERM
DISABILITY PLAN,

          Defendant.

## DECISION AND ORDER

In 2015, Matrix Absence Management, Inc., the Claim Administrator for Defendant Aurora Health Care Long Term Disability Plan (the Plan) denied Plaintiff Sedaet Nazifi's (Nazifi) application for benefits. After exhausting her administrative remedies, Nazifi commenced this action, seeking judicial review of the Claim Administrator's decision under ERISA Section 502(a)(1)(B). Both parties then moved for summary judgment. The question now before the Court is whether there is sufficient record evidence to support the Claim Administrator's decision. Because such evidence exists, Defendant's motion for summary judgment is granted.

### FACTUAL BACKGROUND[1]

Sedaet Nazifi worked for Aurora Health Care as a chef. (ECF No. 15 at ¶¶6, 12.) As an employee, she was covered by the Aurora Health Care Long Term Disability Plan. (*Id.* at ¶7.) The Plan gave the Claim Administrator, Matrix Absence Management, Inc.:

> [F]ull discretionary authority to make decisions on eligibility under this Plan and to construe terms of the plan for this purpose and . . . do so without regard to any possible conflicting interests of Aurora. (ECF No. 13 at 1.)

On December 21, 2012, Dr. Paul Robey excused Nazifi from work due to lumbar-related pain limitations and restrictions. (ECF No. 15 at ¶12.) Nazifi then sought long-term disability

---

[1] These facts are drawn from the proposed statements of undisputed facts (and responses) filed by the parties. (ECF Nos. 13, 15, 20, & 26.) Disputed facts are viewed in the light most favorable to the non-moving party.

(LTD) benefits from the Plan. (*Id*. at ¶16.) To establish eligibility *for the first 24 months*, she needed to provide objective medical evidence of a disability that prevented her from performing her job. (ECF No. 13 at 2-3.) Specifically, at the time, the Plan stated:

> **Inability to Perform Your Job.** You will be considered disabled and eligible to receive benefits under the Plan during the first 24 months of disability payments if, because of injury, sickness, accident, or infectious disease as established by objective medical evidence, you:
>
> - Are continuously unable to perform all the material duties of your regular job and work your pre-disability assigned work hours (this does not include any trial days you might work during your elimination period);
> - Are not gainfully employed for wage or profit in any job with your employer for which you are or become qualified for by education, training or experience; and
> - Require regular care by a licensed physician. (*Id*.)

"Disability or Disabled" was defined as:

> Due to your injury or sickness, you cannot perform each of the material duties of your regular occupation. You must require regular treatment of a licensed physician, practicing within the scope of his or her licenses, during the entire period of your disability. (*Id*. at 2-3.)

In support of her claim, Nazifi submitted lumbar spine X-rays, a lumbar spine MRI, and a Disability Questionnaire setting forth the limitations of her functional capacity. (ECF No. 15 at ¶¶14-16.) Satisfied with her evidence, the Claim Administrator approved LTD benefits on April 3, 2013. (*Id*. at ¶¶16-17.)

Throughout 2013, Nazifi received treatment from Dr. Robey and Dr. Saleem Awan. (ECF No. 13 at 6.) Though both physicians agreed that Nazifi's condition presented serious functional limitations, they diverged slightly in their recommendations. (*Id*.) On July 19, 2013, Dr. Awan sent the Claim Administrator a "Return to Work Recommendations" form, which stated that Nazifi could return to "sedentary work." (*Id*.) But on July 23, 2013, Dr. Robey sent the Claim Administrator a letter stating Nazifi "may not return to work." (*Id*.) At the time, this dispute was immaterial because Nazifi was entitled to benefits unless she was judged capable of returning to her prior job, which was not considered "sedentary." (*Id*. at 5.)

However, in a letter dated September 22, 2014, the Claim Administrator informed Nazifi that it was beginning to evaluate her eligibility for LTD benefits *beyond 24 months*. (*Id*. at 7.) To qualify for these extended benefits, the claimant needed to demonstrate an inability to perform *any* occupation. (*Id*. at 3.) Specifically, the Plan, in relevant part, stated:

>**Inability to Perform Any Occupation.** After 24 months of disability payments, your LTD benefit will continue only if your disability prevents you from engaging in any occupation for which you are reasonably fitted by education, training and/or experience (total disability). If you are totally disabled, LTD benefits will continue to the earliest of the end of the maximum benefit period, your recovery, or your death. You must remain disabled throughout this period and must be under the regular care of a licensed physician. (*Id*. at 3.)

"Total Disability or Totally Disabled" was defined as:

> Due to your injury or sickness, you cannot engage in any occupation for which you are reasonably fitted by education, training and/or experience. You must require regular treatment of a licensed physician, practicing within the scope of his or her licenses, during the entire period of your disability. (*Id*.)

The Plan further stated:

> If you become disabled, you will be required to furnish objective medical evidence which substantiates your disability as often as the claims administrator requires. . . . Your disability must be supported by current objective medical evidence and you must be under the continuous care of a licensed physician undergoing a course of treatment appropriate for your condition. (*Id*. at 4.)

The Plan defined "Proof of Disability" as:

> Current objective medical evidence of the disability or total disability, as applicable, as well as evidence that you continue to be under the appropriate care and treatment of a licensed physician with a course of treatment that is appropriate for your condition. In the absence of such proof, the claim administrator may elect to suspend benefits until such proof is received. (*Id*.)

The Plan defined "Objective Medical Evidence" as:

> A measurable independently observable abnormality which is evidence by one or more standard medical diagnostic procedures including tests, clinical examinations or procedures that support the presence of a disability or indicate a functional limitation. Not all tests or test results meet the criteria for objective medical evidence. Self-reported symptoms are not considered objective and do not establish eligibility for benefits under this Plan. Objective medical evidence may consist of records from your licensed physician, narrative reports, X-rays and other medical records and must correlate to the clinical findings of disability. (*Id*.)

On September 25, 2014, Nazifi completed an updated Disability Questionnaire describing the extent of her functional capabilities. (ECF No. 15 at ¶19.) Further, on October 14, 2014, Dr. Robey responded to the Claim Administrator's request for information with a Physical Capacities Assessment form. (*Id*. at ¶20.) On this form, he wrote, "She can't work—even a sedentary job, needs to lay down frequently when in pain." (*Id*.)

On December 1, 2014, the Claim Administrator informed Nazifi that, while it had received the Physical Capacities Assessment from Dr. Robey, it would need medical records to determine her eligibility for continuing benefits beyond 24 months. (ECF No. 13 at 12.) In response, Dr. Robey submitted both a progress note and a Medical Certification/Work Status Report. (*Id*. at 8-9.) Under the "Physical Exam" heading in the progress note, Dr. Robey wrote: "Back; Full Range of Motion of Lumbar spine. Mildly diminished excursion of lumbar spine. Neuro: Bilateral Achilles and patella. DTRs 2/4. Gait normal. Negative SLR, Leg Strength 5 minus over 5 bilaterally." (*Id*.) Under the "Plan" heading, Dr. Robey wrote: "Continue present management, home exercises followed by walking and frequent changing positions, including the need to lay down. OTC meds as needed. Patient not interested in surgical opinion at this time, I concur because she is able to function with her current disability. Follow-up in 6 months, sooner if worse." (*Id*. at 9.) In the Medical Certification/Work Status Report, Dr. Robey wrote that Nazifi's anticipated return to work date was "Never." (*Id*.)

On January 15, 2015, the Claim Administrator phoned Nazifi to inform her that Dr. Robey's office notes did not support her inability to do any occupation. (*Id*. at 12.) It asked that she submit objective medical evidence, using the example of a Functional Capacities Evaluation, which would demonstrate her physical limitations. (*Id*.) In response, Dr. Robey sent the Claim Administrator a January 16, 2015 letter that reiterated his view that Nazifi could not return to work and emphasized her need to lie down and change positions frequently. (ECF No. 15 at ¶¶21-22.)

The Claim Administrator then asked Mary Zersen, a vocational rehabilitation consultant, to complete a Residual Employment Analysis of Nazifi. (ECF No. 13 at 10.) On March 4, 2015, Zersen filed her report. (*Id*.) Based on Nazifi's past work experience, skills, education, and residual capacities, Zersen created a representative list of occupational alternatives: chef, counter supervisor, food service supervisor, supervisor, commissary production, cook short order, and salad maker. (*Id*.)

On March 6, 2015, the Claim Administrator sent Nazifi a letter denying continuation of LTD payments. (*Id*. at 11-13.) The letter stated: "We sent your claim to our medical staff for review and they determined that your clinical presentation is consistent with light level of function. . . . We have determined that you are not disabled from performing any occupation as defined by the Aurora Health Care Long Term Disability Plan . . . ." (*Id*. at 13.)

On March 10, 2015, the Claim Administrator received a progress note prepared by Dr. Awan. (ECF No. 15 at ¶25.) The note stated: "Overall, patient is doing quite well and she is able to live and function without any specific intervention. At rest, her symptoms are very minimal." (ECF No. 13 at 14.) Dr. Awan also wrote: "She should avoid lifting more than 20 pounds at a time or 10 pounds if she has to do it repeatedly but not more than 20-30 minutes. Other restricted activities are standing, walking, and even sitting for more than 45 minutes. She needs to change positions after that. If she is able to find a job with all of those specific restrictions[,] then good . . . ." (*Id*.)

On March 22, 2015, the Claim Administrator received a progress note prepared by Dr. Robey. (*Id*. at 15.) He wrote: "Patient is, in my opinion, completely disabled from any meaningful employment because of the necessity to lay down for 15-30 minutes every hour in order to prevent severe and disabling back pain." (*Id*.)

On April 6, 2015 Plaintiff's counsel sent a letter to the Claim Administrator "requesting a review of the denial of continuation of benefits beyond March 20, 2015." (*Id*. at 16.) In response, the Claim Administrator referred the matter to Dr. Joseph L. Rea of Reliable Review Services for a peer review. (*Id*.) Dr. Rea reviewed the medical records, discussed Nazifi with Dr. Robey and Dr. Awan, and issued a written report consistent with the Claim Administrator's prior decision. (*Id*.)

The Claim Administrator then further referred the matter to Nicole Dunaway to perform an Independent Vocational Exam consisting of a Residual Employment Analysis and Transferable Skills Analysis & Labor Market Survey. (*Id*. at 17.) The report concluded that Nazifi should be capable of light level work. (*Id*. at 18.) The report also noted the following occupations as reasonable goals commensurate with Nazifi's education, abilities and skills, work history, and residual work capacity: "Food Service Supervisor, Food Assembler Kitchen, Cook, Director of Food Services, and Food Management Aide." (*Id*.) A number of these jobs were available within a 45-mile radius of Nazifi's residence. (*Id*.) On June 16, 2015, the Claim Administrator sent Plaintiff's counsel a letter denying the appeal. (*Id*. at 20.)

## SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate where the admissible evidence reveals no genuine issue of any material fact." *Sweatt v. Union Pac. R. Co.*, 796 F.3d 701, 707 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(c)). Material facts are those under the applicable substantive law that "might affect

the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of "material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. If the parties assert different views of the facts, the Court must view the record in the light most favorable to the nonmoving party. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

## ERISA REVIEW STANDARD

A denial of benefits challenged under ERISA "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). However, if the Plan affords the administrator such discretionary authority, the Court must review the decision under the deferential arbitrary and capricious standard. *See Olander v. Bucyrus Erie*, 187 F.3d 599, 607 (7th Cir. 1999). This standard is "the least demanding form of judicial review of administrative action, and any questions of judgment are left to the administrator of the plan." *Trombetta v. Craigin Federal Bank ESOP*, 102 F.3d 1435, 1438 (7th Cir. 1996). The reviewing court need only ensure that the administrator's decision "has rational support in the record." *Edwards v. Briggs & Stratton Retirement Plan*, 639 F.3d 355, 360 (7th Cir. 2011). This means the administrator's decision will stand so long as: "(1) it is possible to offer a reasonable explanation based on the evidence for a particular outcome; (2) the decision is based on a reasonable explanation of relevant plan documents; or (3) the administrator has based the decision on a consideration of relevant factors that encompass important aspects of the problem." *Edwards*, 639 F.3d at 630. "Put simply, an administrator's decision will not be overturned unless it is 'downright unreasonable.'" *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 576 (7th Cir. 2006) (quoting *Sisto v. Ameritech Sickness & Accident Disability Benefit Plan*, 429 F.3d 698, 700 (7th Cir. 2005)).

The Plan in this case gave the Claim Administrator "full discretionary authority to make decisions on eligibility under this Plan and to construe terms of the plan." (ECF No. 13 at 1.) Therefore, the Court must review the Claim Administrator's decision under the arbitrary-and-capricious-standard. *See Hightshue v. AIG Life Insurance Co.*, 135 F.3d 1144, 1147 (7th Cir. 1998).

# ANALYSIS

Plaintiff offers three main arguments for concluding that the Claim Administrator's decision to deny benefits was arbitrary and capricious. First, she claims the record evidence does not rationally support the denial. Next, she alleges that she was not provided proper notice. Finally, she alleges a structural conflict of interest.

**I.  Record Evidence Rationally Supports the Claim Administrator's Decision to Deny Benefits.**

In denying Plaintiff's claim for benefits, the Claim Administrator's decision cites several pieces of evidence. The Claim Administrator noted that Plaintiff had full range of motion in her lumbar spine and a normal gait. (ECF No. 19 at 11.) She did not have significant lifting restrictions. (*Id.*) Her treatment plan consisted only of home exercise and as-needed Advil. (*Id.*) Her physical exam was "essentially normal." (*Id.*) Her pain management physician believed she could return to "sedentary work." (ECF No. 13 at 6.) The Claim Administrator's medical staff believed her presentation was consistent with a light level of function. (*Id.* at 13.) And a peer review of the initial denial confirmed the light-level prognosis and unearthed several jobs consistent with Plaintiff's abilities within 45 miles of her residence. (*Id.* at 17-19.) In sum, the Claim Administrator's decision is supported by at least four independently sufficient grounds for denying benefits: (1) the objective medical evidence; (2) Dr. Awan's submissions; (3) the Claim Administrator's medical staff's analysis; and (4) Dr. Rea and Ms. Dunaway's review of the record. This is more than sufficient to satisfy the Claim Administrator's burden. *See Williams v. Aetna Life Ins. Co.*, 509 F.3d 317 (7th Cir. 2007); *Ruiz v. Continental Cas. Co.*, 400 F.3d 986, 991-92 (7th Cir. 2005); *Griffin v. AT&T Umbrella Benefit Plan No 3*, No. 18-C-1804, 2020 WL 1185286 (E.D. Wis. March 12, 2020).

But Plaintiff contends that the decision is merely cloaked with a veneer of reasonableness. She argues that the Claim Administrator refused to give due weight to other relevant evidence and failed to consider the functional limitations and restrictions caused by her subjective pain symptoms. (ECF No. 16 at 3-4.) The Court will take these allegations in turn.

**A.  The Claim Administrator Properly Considered the Objective Medical Evidence Plaintiff Submitted.**

Plaintiff argues that the Claim Administrator improperly failed to consider Plaintiff's 2013 X-rays and MRI and ignored Dr. Robey's 2014 Physical Capacities Assessment, rendering the

denial of benefits improper. (*Id*. at 7-9.) Plaintiff's argument misconstrues the Plan Administrator's analysis.

As an initial matter, Plaintiff is correct that the X-rays and MRI are objective medical evidence under the terms of the Plan. The Plan explicitly includes X-rays in its illustrative list of examples of objective medical evidence. (ECF No. 13 at 4.) But Plaintiff is wrong in assuming that the mere submission of this relevant evidence necessitated a finding of *total* disability under the Plan. The Claim Administrator never disputed that Plaintiff's X-rays and MRI evinced a disability that entitled her to 24 months of LTD payments. (ECF No. 12 at 10.) In fact, even now, the Claim Administrator does not dispute that Plaintiff is still disabled. (ECF No. 31 at 12.) But the existence of a disability does not mean that Plaintiff was entitled to LTD benefits under the Plan's standard for *continuing* LTD benefits. The more exacting standard for continuing LTD benefits requires Plaintiff to prove that she was unable to perform "*any* occupation for which [she was] reasonably fitted by education, training and/or experience." (ECF No. 13 at 4.) (italics added.) While the Claim Administrator accepted that Plaintiff's X-rays and MRI revealed lumbar degenerative disc disease that prevented her from returning to her prior occupation as a chef and awarded her initial benefits in 2013 (ECF No. 12 at 10 n.4), it was under no logical obligation to accept that same evidence as proof of an inability to return to lighter forms of work in 2015. *See Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan*, 378 F.3d 669, 678 (7th Cir. 2004).

Moreover, Plaintiff's assertion that the Claim Administrator ignored her X-ray and MRI evidence is off base. The 2015 denial letter specifically referenced this evidence. (ECF No. 12 at 10 n.4.) Plaintiff's real complaint is that the Claim Administrator did not accord that evidence as much weight as she desired. But that is not a basis for judicial reversal of the decision.

As for Dr. Robey's 2014 Physical Capacities Assessment, the initial denial letter clearly communicated that such an assessment did not qualify as "objective medical evidence" under the Plan. (ECF No. 19 at 7.) Indeed, the Physical Capacities Assessment form does not indicate that Plaintiff was tested or tried to perform any movements to evaluate what she could do in a workday. (*Id*. at 18.) Absent that kind of functional analysis, the Claim Administrator was permitted to conclude that the form was not entitled to any weight on the question of total disability. When functional limitations could have been objectively measured, a claim administrator does not act

arbitrarily and capriciously by denying an application on the basis that the record lacked such objective measurements. *See Williams*, 509 F.3d at 323.

### B. Plaintiff's Self-Reported Pain Symptoms Cannot Demonstrate Total Disability.

Plaintiff next argues that the Claim Administrator failed to consider and give due weight to the functional limitations and restrictions caused by her subjective pain symptoms—specifically her frequent need to lay down. (ECF No. 16 at 3-4.) But Plaintiff never provided adequate proof of those limitations and restrictions. (ECF No. 19 at 10.) The terms of the Plan explicitly (and legitimately) required Plaintiff to proffer "current objective medical evidence" of total disability. (ECF No. 13 at 4.); *see Heimeshoff v. Hartford Life and Accident Insurance*, 567 U.S. 310 (2013) (holding that plan sponsors are entitled to define when they will provide benefits and have a fiduciary obligation to apply the plan terms as written). Those same terms also made clear that "[s]elf-reported symptoms are not considered objective and do not establish eligibility for benefits under this Plan." (*Id.*) Yet Plaintiff premises much of her case on the self-reported need to lay down at regular intervals. (ECF No. 16 at 5-6.)

It is true that Plaintiff routinely reported back pain to Dr. Robey, who dutifully recorded it in progress notes and letters. And it is also true that claim administrators cannot deny benefits solely on the ground that a claimant's injury is subjective. *See Williams*, 509 F.3d at 322; *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914 (7th Cir. 2003). But the Claim Administrator was not required to credit Plaintiff's objectively unverified claims. *See Williams*, 509 F.3d at 322 ("A distinction exists[,] however, between the amount of fatigue or pain an individual experiences . . . and how much an individual's degree of pain or fatigue limits his functional capabilities, which can be objectively measured."). In a strikingly similar case, the Seventh Circuit held that a claim administrator's decision to deny LTD benefits was not arbitrary and capricious because the claimant failed to provide sufficient evidence of the functional limitations caused by her back pain. *See Aschermann v. Aetna Life Ins. Co.*, 689 F.3d 726 (7th Cir. 2012); *see also Ruiz*, 400 F.3d at 991-92 (holding that it was not arbitrary and capricious to require objective evidence of functional limitations). Here, Plaintiff's only evidence of her functional limitations is her own self-reported symptoms as parroted in Dr. Robey's reports. (ECF No. 19 at 6.)

Plaintiff maintains, though, that the medical opinions[2] in Dr. Robey's reports entitle her to benefits. Not so. "Plan administrators may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 823 (2003). "But courts have no warrant to require administrators to accord special weight to the opinions of a claimant's physician; nor may courts impose on administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Id*. at 823-24. And the Claim Administrator certainly credited Dr. Robey's medical opinion. The initial denial letter stated that medical staff reviewed the claim and "noted that [Plaintiff] report[ed] pain with minimal exertion, but [that] this [was] not consistent with the physical examination findings or [her] level of care." (ECF No. 13 at 13.) In other words, the Claim Administrator considered Dr. Robey's opinion, but found it inconsistent with the available objective evidence.

Additionally, as Defendants have noted, Dr. Robey's opinion was at odds with both Dr. Awan's and Dr. Rea's conclusions. (ECF No. 12 at 9-12.) To the extent that this represented a disagreement based on conflicting medical evidence, that is a "question of judgment that should be left to [the Claim Administrator] under the arbitrary-and-capricious standard." *Davis*, 444 F.3d at 578. "Physicians disagree. . . . It is not arbitrary or capricious to resolve such a conflict in either direction." *Aschermann*, 689 F.3d at 730. In this instance, the Claim Administrator made a reasoned choice between competing theories. The Court has no authority to second-guess it.

## II. The Claim Administrator Provided Plaintiff Proper Notice of What Was Required to Establish Entitlement to Benefits.

Even if the decision itself was rational, Plaintiff argues that the Claim Administrator's denial was still arbitrary and capricious because it failed to adequately notify her and her physicians of what was required to establish entitlement to long-term benefits. (ECF No. 16 at 8.) ERISA requires plan sponsors to provide a written denial notice containing specific reasons for denial and referring to the pertinent plan provisions on which the denial was based. *See* C.F.R. §2560.503-1(g)(i), (ii). But Plaintiff's argument appears focused on C.F.R. §2560.503-1(f)(3) in particular. That provision requires a written denial of benefits "to describe any additional material or information necessary for the claimant to perfect [her] claim, as well as explain why such

---

[2] Leave aside the question of whether Dr. Robey's pain reports constituted medical opinions or mere scrupulous transcription.

material or information is necessary." *Brehmer v. Inland Steel Industries Pension Plan*, 114 F.3d 656, 661 (7th Cir. 1997). However, this "perfect the claim" regulation only applies when the administrator needs additional information to reach a determination. *Id*. at 661-62. Here, as in *Brehmer*, the administrator had no such need. *Id*. at 661. Thus, the "perfect the claim" regulation was not implicated.

And, even if it were, substantial compliance with the regulations is sufficient. *Id*. at 662. To determine whether a claim administrator substantially complied with ERISA, courts ask whether the claimant "was supplied with a statement of reasons that, under the circumstances of the case, permitted a sufficiently clear understanding of the administrator's position to permit effective review." *Halpin v. W.W. Grainger, Inc.* 962 F.2d 685, 690 (7th Cir. 1992). Further, all a claim administrator must provide "is the reason for the denial of benefits; he does not have to explain to [claimant] why it is a *good* reason." *Gallo v. Amoco Corp.*, 102 F.3d 918, 922-23 (7th Cir. 1996) (italics in original).

The Claim Administrator in this case complied with ERISA notice requirements. In 2014 communications with Dr. Robey, the Claim Administrator asked that he "[p]lease . . . include medical records from 4/16/2014 through the present." (ECF No. 19 at 18.) Those records were never submitted. (*Id*.) On January 15, 2015, the Claim Administrator phoned Plaintiff and told her she needed to submit objective medical evidence of her total disability, giving the example of a Functional Capacities Evaluation. (*Id*. at 19.) The initial denial letter reiterated that the success of Plaintiff's claim was contingent on submission of objective medical evidence of her total disability, once again citing the example of a Functional Capacities Evaluation. (*Id*.) The letter went on to explain that, because she had never supplied such objective medical evidence, the medical review staff had concluded that her disability did not prevent her from performing any job, as required for extended benefits. (ECF No. 13 at 13.)

Unlike the notice in *Halpin*, which simply requested "additional medical information," the notice in this case explained exactly what Plaintiff needed to submit to win her claim. *Cf. Halpin*, 962 F.2d at 691, *with* ECF No. 13 at 11-13. Thus, there is no doubt that the Claim Administrator substantially complied with ERISA. Plaintiff's notice argument fails.

**III.     To the Extent a Structural Conflict of Interest Exists, It Is Irrelevant.**

Finally, Plaintiff points to the Plan's alleged structural conflict of interest as evidence of arbitrary and capricious behavior. (ECF No. 16 at 2-3.) "The Supreme Court has held that, in the context of ERISA, when an entity both pays out benefits under a disability plan and administrates claims under that plan, it operates under a structural conflict of interest." *Young v. Aetna Life Ins. Co.*, 146 F.Supp.3d 313, 336 (D. Mass. 2015) (citing *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008)). When such a conflict is present, "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits." *Glenn* 554 U.S. at 108.

It is unclear that the Claim Administrator in this case, Matrix Absence Management, Inc., had the type of structural conflict flagged in *Glenn*. (ECF No. 19 at 23.) The Plan was self-funded with Aurora paying the long-term disability benefits to participants from its general assets. (ECF 13 at 22.) Thus, Matrix, the Claim Administrator, which made the decisions on adjudicating claims, was not the entity that funded the plan or paid the resulting benefits. (*Id*. at 23-24.) *See Raybourne v. Cigna Life Ins. Co. of New York*, 576 F.3d 444, 449 (7th Cir. 2009) (describing a structural conflict of interest as one where a claim administrator both adjudicates claims and pays benefits).

And, even if a conflict existed, Plaintiff's argument would still fail. "The *likelihood* that the conflict of interest influenced the decision is . . . the decisive consideration." *Marrs v. Motorola, Inc.*, 577 F.3d 783, 789 (7th Cir. 2009.) Plaintiff did not allege that the supposed structural conflict affected the decision to deny benefits at all. She merely invoked it as a factor for the Court to consider. But it is a factor that can only act as a "tiebreaker" to tip the balance in close cases. *See Glenn*, 554 U.S. at 117-18; *Edwards*, 639 F.3d at 365; *Black v. Long Term Disability Ins.*, 582 F.3d 738, 746 (7th Cir. 2009). This is not a close case, so the tiebreaker consideration is irrelevant.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment under Fed. R. Civ. P. 56 (ECF No. 11) is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment under Fed. R. Civ. P. 56 (ECF No. 14) is DENIED as moot.

Dated at Milwaukee, Wisconsin on October 8, 2021.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge